## GILMORE et al. v. VAUGHN.

(Circuit Court of Appeals, Seventh Circuit. April 14, 1914. Rehearing Denied June 4, 1914.)

No. 2042.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BOTTLE OPENER.

The Vaughn patent, No. 1,029,645, for a bottle opener, shows a patentable improvement over the device of patent No. 943,759 to the same patentee and is valid; also, *held* infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Arthur L. Sanborn, Judge.

Suit in equity by Harry Lockwood Vaughn against Leslie A. Gilmore and others. Decree for complainant, and defendants appeal. Affirmed.

For opinion below, see 204 Fed. 464.

Leslie A. Gilmore, of Chicago, Ill., for appellants.
James R. Offield, of Chicago, Ill., for appellee.

Before BAKER, KOHLSAAT, and MACK, Circuit Judges.

KOHLSAAT, Circuit Judge. This cause is here on appeal from the decree of the District Court adjudging patent No. 1,029,645, granted to appellee on June 18, 1912, for a bottle opener, to be valid and infringed. The one claim sued upon, viz., claim 3, reads as follows:

"A bottle opener consisting of a fixed base having a right angular extension, said extension having a semicylindrical end adapted to engage the cap of a bottle and a resilient brace therefor."

The device has for its object the removal of the crimped metal caps used for sealing bottles, and is claimed by the specification to be an improvement over the opener of patentee's prior invention, No. 943,759, granted December 21, 1909. It is made stationary by fastening to some convenient fixed support by means of screws or nails. In operation, the bottle to be opened is brought in such relation with the device that the inwardly curved lip or hook thereof engages the cap on the bottle and pries it off when the bottle is pressed toward the support. "When the bottle is being opened," says appellee's expert, speaking of the claim in suit, "there is something of a downward pull on the pry edge or lip, affording a slight yield at that point. There is also simultaneously present a slight yield at the fulcrum point of the cap upon the lower edge or groove of the depending brace, so that there is a yielding or resilient effect at both sides of the bottle cap acting in opposite directions, the result of which is that the action of the device upon the neck of the bottle is gentler than where both or either of the points of contact might be absolutely rigid."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Following is a reproduction of figure 2 of the drawings of the patent in suit:

In the specification, *1* indicates a base to which the device is secured, *2* and *3* represent the screws or nails whereby it is secured; *4* indicates a supporting base, *5* a right-angular projection therefrom, *6* the semicylindrical formed edge of part *5*, and *7* the free edge of part *6* bent up at right angles to form a cap engaging member. The device is made preferably of sheet metal having some resiliency, doubled upon itself at part *7* to form a 2-ply cap engaging hook the inner leaf of which is designated by *9*. At a subcentral position the inner plate of the doubled metal diverges from the part *5* until its end *11* is in a plane parallel to the base *1*, serving as an unanchored brace for the other parts of the device. The groove *10* is not covered by the claim in suit. The drawing shows the operation of the crown removing device.

Appellee's commercial device differs from that of his patent, in that it has no free edge of part *6* bent up at right angles to form a cap engaging member corresponding to said part *7* of the drawing, but has a free edge terminating below the part *6*, which is slightly curved inwardly. It will be noticed that claim 3 alone of all the claims, fails in terms to call for said part *7* bent up at right angles to form a cap engaging member. Appellants claim that they are licensed to manufacture the same. They also deny patentability.

Appellee is also the owner of an undivided half of said above-mentioned patent No. 943,759. The record discloses that after filing application for this earlier patent, and on December 11, 1909, appellee

assigned a half interest therein to one Edward Court; that afterwards, on February 21, 1910, said Edward Court and appellee entered into an agreement with appellant Gilmore whereby the latter was given the exclusive right to manufacture and sell the patent and any "improvements upon said invention by said inventor hereafter made." The device actually manufactured under this agreement and under a subsequent copartnership agreement between appellee and said Gilmore is appellants' present manufacture; it had been previously designed and manufactured by appellee, the precise structure of his patent No. 943,759 having never been placed upon the market. It further appears that on July 18, 1910, in consideration of $1,875, all right and title to said patent acquired under the agreement of February 21, 1910, or under the copartnership agreement, by Gilmore, were reconveyed by him to appellee. Subsequently, in September, 1910, appellants by assignments from Edward Court acquired whatever right the latter had in said patent, being a one-half interest. Appellants thereupon proceeded to manufacture and sell the device alleged to be an infringement.

It is evident from the foregoing that whatever rights appellant Gilmore may have acquired by virtue of his license of February 21, 1910, in the improvements of the patent, were relinquished by his subsequent reconveyance to appellee on July 18, 1910. So that the only question remaining is whether there were such improvements as patentably distinguish appellee's two patents. Figures 1 and 5 of the drawings of his earlier patent, No. 943,759, are here shown:

In the specification *1* indicates a support for the cap remover, which is formed preferably out of a single piece of sheet metal; *2* represents a base or body portion; *4* indicates an inclined or bent portion which extends at a slight angle from part *2* and is bent over to form a semicylindrical member *5*, the edge of which is beveled as desired at *6* for forming an edge *7*, extending the full length of the

opener. In figure 5 is shown a cushioning member 8 which may, the specification says, be made from any desired material that will protect the bottle.

This device, it will be noted by a comparison of the drawings of the two patents, lacks the apron or extension designated by the figure 11 in the drawing of the patent in suit. This extension 11 is termed in the claim sued upon a "resilient brace," and is the element which it is claimed evidences the patentability of the device in suit over the earlier patent. The functions of the brace, i. e., to lend flexibility and support to the device and thus prevent chipping or cracking of the bottle when being opened and undue yielding of the device, seem to be essential to the utility and most effective operation of the patent. There is nothing in the prior patent corresponding to this brace. It coacts with its adjacent member, i. e., the pry edge, in such a way that in operation each reinforces the other, thus obviating the necessity for the heavy and rigid material of the earlier patent and at the same time increasing its efficiency and affording that flexibility required to produce the desired improved result, in an improved manner.

There is evidence that the patent has gone into quite extensive use. There is nothing in the prior art which responds to the claim sued upon, unless it be the device of said drawing figure 5, which we do not deem its equivalent. Appellants have recognized its superiority over the prior patent, and its utility is unquestioned—all of which, together with the other characteristics above mentioned, attest its patentable merit. The patent is therefore held to be valid and infringed.

The decree of the District Court is affirmed.